The People ex rel. William Conliss et al., Respondents,
*v.* Charles F. North, Appellant.

The Legislature has power to provide for the manner in which the result of an election shall be determined and declared, and their enactment in reference thereto is binding.

Under the provisions of the charter of the city of Cohoes (chapter 912, Laws of 1869, as amended), the declaration and certificate of the common council, prescribed by section 10, as to the person duly elected, are necessary to complete the election of a ward officer as well as a general officer of the city, and are indispensable to qualify the candidate to enter upon the duties of his office.

Said section applies to aldermen; and until an election is thus completed, and the new board of aldermen thus become duly qualified, the old board continue in office, and are entitled to act in the discharge of any business appertaining to the office.

In March, 1874, defendant was duly appointed by the common council chamberlain of said city, for the term of two years; no successor having been appointed at the expiration of that term, he held over. On March 13th, 1877, which was the first Tuesday after the annual election of that year, the common council met, the members of the old board of aldermen

meeting and being recognized as members thereof; and before any announcement was made that new aldermen had been elected or claimed recognition as such, or had taken the oath of office, and without objection, a resolution was passed reappointing the defendant as chamberlain, who took the oath of office and filed the required bond, which was approved by the mayor. The common council thereafter convened as a board of canvassers, received the statements of the inspectors and declared and certified the election of the new officers, including aldermen. At a subsequent meeting of the common council, composed in part of the newly elected members of the board, a resolution was passed appointing the relator as chamberlain; *held*, that defendant was duly appointed and was entitled to the office.

(*Argued December 18, 1877; decided January 15, 1878.*)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, in favor of relators, entered upon a case submitted under section 372 of the Code.

The question submitted was as to who was entitled to the office of chamberlain of the city of Cohoes.

The facts stated are substantially as follows: Defendant was appointed chamberlain March 13, 1874. At the expiration of his term (two years), no new appointment was made, and he held over. The annual charter election for the year 1877 was held March sixth. The ward inspectors on that day made the requisite statements in writing, which were delivered to the city clerk, and were placed on file in his office. On the first Tuesday following such election, which was March thirteenth, the newly-elected aldermen filed oaths of office. In the evening of that day the common council met, the old members of the board of aldermen acting and being recognized by the mayor. Resolutions were passed appointing defendant chamberlain of the city, and prescribing the penalty of his official bond. At or prior to this time no announcement had been made as to the election of new aldermen, or that any others claimed to be recognized or had taken the oath of office, and no objection was made to the resolution. After the resolution had been adopted, such an announcement was made. A motion to

adjourn was then carried, and the common council immediately thereafter convened as a board of canvassers. The city clerk delivered the statements of the inspectors, and the board proceeded to declare and determine the persons duly elected to the offices voted for, including the aldermen, and by resolution declared the persons duly elected to the respective offices.

The case states "that no other or different determination or certificate or canvass of the number of votes cast at such election for the persons voted thereat for aldermen and other offices above named, or as to who were elected such, has ever been had or made by the common council of Cohoes." After so declaring and certifying the result, and directing the clerk to notify the persons elected, the board adjourned. The newly elected aldermen immediately thereafter again, signed and took an oath of office, and the common council again convened, the new aldermen sitting. Without transacting any business, they adjourned. Defendant took the oath of office as chamberlain, procured and filed a bond, with penalty, as prescribed by said resolution of the common council, which bond, with the sureties, was duly approved by the mayor. At a meeting of the common council, held March 19, 1877, a resolution was adopted appointing the relator as chamberlain against the protest of the mayor and a minority of the board of aldermen. The relator took the oath and caused to be executed and filed the required bond, which was approved by the board. Further facts appear in the opinion.

*Nathaniel C. Moak*, for appellant. The reappointment of defendant by the common council of 1876 was proper, and the appointment was valid. (*People* v. *Tremain*, 9 Hun, 573; *People* v. *McKenny*, 41 Barb., 516; *State* v. *Pearcy*, 44 Mo., 159; Laws 1869, chap. 912, p. 2328, § 10; Laws 1872, chap. 79, p. 200, § 9; Laws 1869, chap. 912, p. 2350; *Hadley* v. *Mayor*, 33 N. Y., 603; *State* v. *Smith*, 23 Min., 218, 223; McCrary on Elections, 159, 160; *People* v. *Stevens*,

5 Hill, 617, 631; *People* v. *Hill*, 1 Lans., 206; *Nelson* v. *People*, 20 N. Y., 296; *Cotton* v. *Beardsley*, 38 Barb., 64; *Cornish* v. *Young*, 1 Ashm., 153, 155; *People* v. *Cook*, 8 N. Y., 89; *Morris* v. *People*, 3 Den., 381; *Ex parte Strong*, 21 Ohio St., 610; *People* v. *Carter*, 29 Barb., 212; *People* v. *Woodruff*, 32 N. Y., 355; *Cary* v. *North*, 4 Sup. Ct. R., 357; *People* v. *Sup'rs.*, 5 Hun, 120; *People* v. *Tilton*, 37 Cal. 614; *State* v. *Mathews*, 7 Kans. 327; *Adams* v. *Ives*, 63 N. Y., 658.)

*Matthew Hale*, for respondents. Defendant's possession was not sufficient. The burden was upon him to show his right to the office. (*People* v. *Thatcher*, 55 N. Y., 525, 529.)

RAPALLO, J. By section 9 of title 3 of the charter of the city of Cohoes, it is provided that the inspectors of election of each ward shall canvass the votes given at every city election, and make a statement determining and certifying the number of votes cast for each person for city and ward officers and for school commissioners, and that such statements shall be immediately delivered to the city clerk. Section 10 of the same title provides that the clerk shall deliver such statements and certificates to the common council at their next meeting, which shall be *on the Tuesday next after the annual election* in each year, who shall *upon such statements and certificates declare and determine* what persons have been elected to the respective offices voted for at such election. That the persons having the greatest number of votes for the respective offices to be filled by general ticket for the whole city, and those having the greatest number of votes for the offices to be filled by the electors of the several election districts or wards *shall be declared duly elected*, and the common council shall make and subscribe certificates thereof in duplicate, etc., which are to be filed and recorded as directed in the act. It is further provided that the city clerk shall serve upon the persons declared elected, notice of their election, and by section 12 of the same title it is provided that every such person who shall for ten days after

128      PEOPLE ex rel. CONLISS et al. *v.* NORTH.      [Jan.,.

Opinion of the Court, per RAPALLO, J.

notice of his election neglect to take the oath of office, shall pay a fine and be deemed to have declined the office. (Laws of 1869, ch. 912, pages 2327, 2328.)

We think that the determination of this case depends upon two questions. First, whether under these provisions the election of a *ward officer* is complete, until he shall have been declared and certified by the common council to have been duly elected, and whether this declaration and certificate are indispensable for the purpose of consummating the election and qualifying the candidate to enter upon his office. Secondly, whether the provisions of section 10 are applicable to the office of alderman. Should both of these questions be decided in favor of the appellant, he must succeed; for it would then be manifest that all the aldermen sitting in the common council which appointed him to the office of chamberlain on the 13th of March, 1877, were still in office, and he was duly appointed.

This is apparent from section 15 of the same title, which provides that all officers, except justices of the peace, elected at the annual city election, shall continue in office until their successors shall have taken the oath of office, and become duly qualified to serve therein. Those aldermen, therefore, who were in office at the date of the annual election, in March, 1877, continued in office until their successors were duly elected and qualified. If the declaration and certificate of the common council, pursuant to section 10, are necessary to the election and qualification of a ward officer, and that section applies to aldermen, it is clear that the new aldermen, voted for at the election in March, 1877, were not duly elected and qualified at the time of the appointment of the appellant, and had no right to take any part in the proceedings, because no such declaration or certificate had then been made, and the aldermen composing the old board consequently continued in office.

Upon the first question we are of opinion that the declaration and certificate of the common council is indispensable to the election and qualification of ward as well as city officers.

It is, by the express terms of the act, required as to ward officers; and although the same reason does not exist as in the case of city officers for requiring it, yet as the Legislature have done so, the courts cannot dispense with it. The Legislature can provide for the manner in which the result of an election shall be determined and declared, and their enactment is binding. In the case of city officers, who are elected by the aggregate of the votes cast in the several wards, it is obvious that the power to ascertain what is the aggregate vote for each candidate, and officially declare the result of the election, must be lodged somewhere, for the certificates of the inspectors show only the votes cast in the wards separately; and it is not contended that, as to such officers, the declaration and certificate of the common council can be dispensed with. But as to ward officers it is claimed to be unnecessary, because power is given to the inspectors of the several wards or districts to make statements determining and certifying the number of votes cast for each person for city and ward officers; and inasmuch as the common council are, upon such statements, to declare and determine what persons have been elected, such declaration is but a repetition of the determination of the inspectors, no canvass being necessary, and the statements of the inspectors being conclusive upon the common council.

This argument shows only that, in the case of ward officers, the Legislature might have dispensed with the declaration of the common council, and made the return of the inspectors final; but they have not done so. If they require, expressly, that two separate sets of officers shall both certify the result, their mandate must be obeyed. It is also to be observed that the power given to the inspectors is not to declare who is duly elected, but simply to certify the number of votes cast for each candidate, while the power to determine, declare and certify which are duly elected is given solely to the common council.

We cannot concur in the view that these provisions are only for the purpose of limiting the time within which the

persons elected must take the oath of office. An examination of the whole section shows, we think, that its intention was to provide for the manner in which the election of the candidate should be consummated and officially declared; and that until these acts are done, his election is not complete, and he is not qualified to serve.

The second question must also, we think, be determined in favor of the appellant. There is nothing in the charter from which an intention to exempt aldermen from the operation of section 10 can be inferred. They are elected in the several wards by the electors of each ward. (Title 3 of charter, § 1, Laws of 1869, pp. 23, 26.) They must be included in the statements of the inspectors, which are required to be delivered by them to the city clerk, and by him to the common council at their next meeting after the election, and they are expressly recognized in the amendments to the charter as ward officers. (Laws of 1875, p. 228, § 2.) The common council is required to meet on the first Tuesday after each annual election. At that meeting the statements of the inspectors are to be delivered to them. There is no provision for announcing or publishing before that time the result of the election. What persons are to convene at that meeting? Who are to receive the statements of the inspectors? Whom can the mayor or presiding officer recognize as members of the common council? Clearly the members of the old board only, for he has no official knowledge up to that time of the election of successors to any members of that body. The charter further provides that the common council shall be the judge of the election and qualification of its own members. (Tit. 5, § 6.) Suppose there were some irregularity or defect in the statements of the inspectors, and it was claimed that some new member was not duly elected, or some question existed as to his competency to hold the office, must his predecessor vacate his seat until those questions are determined? In the present case it is stated in the agreed statement of facts, that the members of the old board were, at the meeting in question,

all recognized by the mayor as members, and that the resolution appointing the appellant was adopted before any announcement was .made by any one that the new aldermen had been elected, or claimed recognition as such, or had taken the oath of office; and no objection was made to the proceedings of the old board in making the appointment. The common council, after making the appointment, convened as a board of canvassers. The city clerk then delivered to them the statements of the inspectors, and they thereupon declared and certified the election of the new members and other officers chosen at the election; and afterwards the new aldermen again took the oath of office, although they had taken the oath before the meeting, and that no other declaration or certificate of their election as aldermen has ever been made by the common council of Cohoes. It does not appear that the statement of the inspectors was ever delivered to them until after the appointment had been made.

We think the appointment of the appellant was duly made. It is claimed that the aldermen composing the old board, whose terms had expired, were out of office by virtue of section 15 of title 3 of the charter, which provides that all officers, except, etc., shall continue in office until the Monday succeeding the annual city election. But to this provision the words are added, " and until their successors have taken the oath of office, and become duly qualified to serve therein." This brings us back to the original question, when is it legally ascertained who are their successors, and when do they become duly qualified to serve ?

Reliance is also placed, by the relator, upon the provision of section 15, to the effect that all officers, except justices of the peace, elected at the annual city election, shall enter upon the duties of their offices on the Tuesday succeeding their election. It is contended that under this provision the newly elected aldermen were entitled to enter upon the duties of their offices on Tuesday the thirteenth of March, without any action of the common council. This argument proves too

much.   If the provision be taken literally, every officer, whether a ward or city officer, can enter upon the duties of his office on Tuesday, before his election is legally ascertained and declared, and before he has taken any oath of office or given any bond.   Such cannot be the true construction of the provision.   It must be deemed subject to the condition that the election be completed by the official canvass and certification prescribed by the act, and that the persons declared elected have taken the oath of office and given a bond, where one is required.   If these acts are not done on Tuesday, they cannot enter upon the duties of their offices on that day.   The aldermen in question here did become qualified to enter upon the duties of their offices on Tuesday, but not until after the appointment in controversy had been made.   Their election was then duly certified and declared. The provision, in the same section, that the persons in office at the time of the election shall continue in office until the Monday succeeding the election, and until their successors have become duly qualified, etc., can in no event operate to terminate their offices on Monday, for by the terms of the charter it is impossible that they should become qualified to serve until the meeting directed to be held on Tuesday, as it cannot until then be legally determined that they have been elected.   This is conceded as to city officers, and by the act ward officers are put in the same category.

We cannot adopt the ground upon which the court, at General Term, appear to have based their decision, in part, if not wholly, viz. : that if the aldermen not re-elected remained in office on Tuesday, it was only for the purpose of declaring the election of their successors.   There is no statute to that effect, and we can refer to no principle upon which their powers can be thus divided.   They must be either in or out of office.   If out of office, they could perform no official act.   If in office, they could perform all official acts, though a sense of propriety would generally, it must be supposed, deter them from making appointments which it might appertain to their successors to make.

It may be that some of the provisions of the charter are incongruous, and others lead to results not anticipated. But we cannot remedy such defects by construing any of the provisions contrary to their plain meaning. If the charter is defective, the remedy must be sought in the Legislature, and not in the courts.

In the case before us no injustice has been done, and there was no impropriety in the making of the appointment in question by the common council of 1876, for it was an appointment which that common council had the right to make, and should have made in 1876 to continue until 1878. (Laws of 1872, chap. 79, § 9, p. 200.) They had omitted that duty, and it was part of their unfinished business at the time of the annual election, and by performing that duty when they did, they were guilty of no encroachment upon the privileges of the incoming members.

The judgment should be reversed, and judgment rendered in favor of the appellant declaring him entitled to the office, and the rights and emoluments thereof.

All concur, except MILLER, J. absent.

Judgment accordingly.